Eleanor **RAUSCH**, Darwin Rausch, Jr., Roderick Rausch b/n/f Eleanor Rausch, Appellants (Plaintiffs below)

v.

James C. **JONES**, Mary P. Jones, Jamar Company, and J & M Properties, Inc. Appellees (Defendants below).

No. 74A01–8612–CV–333.

Court of Appeals of Indiana, First District.

June 29, 1987.

Rehearing Denied Aug. 5, 1987.

David L. Clark, Jay D. Walden, Buthod, Longest, Clark, Rietman & Steedman, Evansville, for appellants.

Richard A. Wetherill, Angela L. Hawhee, Rockport, for appellees.

ROBERTSON, Judge.

The plaintiffs-appellants Eleanor Rausch and her two sons, Darwin Rausch, Jr. and Roderick Rausch, appeal from a negative judgment rendered at a bench trial in a cause of action seeking to rescind the Rausches' purchase of a ⅟₃₂ working interest in an oil and gas well. The defendants-appellants James C. Jones and his wife Mary P. Jones are the owners of Jamar Company and J & M Properties, Inc.

A summary of the facts shows that Eleanor Rausch learned of an oil well which was to be drilled by J & M Properties, Well # 8, in a conversation with a Don Holder. Holder told Eleanor that he had previously invested in Jones's oil well business and that he had invested in a ¼ working interest in Well # 8. Holder was convinced that it was a "sure thing." Holder gave Eleanor Rausch other information about the well which will be set forth subsequently. Eleanor Rausch, apparently caught up in Holder's enthusiasm, contacted her son Darwin who consented to financial participation. Collectively, the Rausches sent $2375 to the Joneses for the ⅟₃₂ working interest in the well. Additionally, Holder, other than as investor, held no relationship with the Joneses or the companies. The Rausches had no contact with the Joneses prior to sending the money.

As might be assumed Well # 8 was a dry hole. Rausches filed suit pursuant to I.C. 23–2–1–19 against the Joneses seeking recission of the ⅟₃₂ working interest. The complaint alleged a violation of the Indiana Securities Act because there was no registration of the sale of securities with the State Securities Commission, that the sale was not exempt from registration, and, that the Joneses did not provide all material facts necessary to make the investment. The trial court ruled against Rausches in all respects with this appeal following.

Because we reverse, the only issue to be discussed is:

Did the Court err as a matter of law in finding that all material facts were presented to the Rausches regarding the J & M Properties # 8 oil and gas well, located in Spencer County, Indiana, prior to their investment in that well?

We would note that in reviewing a negative judgment we are confined to one standard of review: only when the evidence is without conflict and leads to but one conclusion and the finder of fact reached a contrary conclusion will the decision be disturbed as contrary to law. *Captain and Co., Inc. v. Towne* (1980), Ind. App., 404 N.E.2d 1159.

The Indiana Uniform Securities Act, IND.CODE 23–2–1–1 et seq., provides, among other things, that certain securities are exempted from registration requirements. I.C. 23–2–1–2. The specific provision involved in this issue is I.C. 23–2–1–2(b)(10) which reads:

(G) The issuer need not comply with clause (D), (E) or (F), if:

\* \* \* \* \* \*

(iii) the aggregate offering price of the securities, including securities sold outside of Indiana, does not exceed two hundred fifty thousand dollars ($250,000); the total number of purchasers, including purchasers outside of Indiana, does not exceed fifteen (15); and each purchaser either receives all of the material facts with respect to the security or is an accredited investor or a purchaser described in item (i).

The question here is whether the Rausches received all material facts. The parties

concede the remainder of the quoted statute is not applicable.

In its informal opinion the trial court mentions that Rausch was informed of the amount to be invested, the approximate amount of well completion costs, Rausch saw a map of the area, she was told of producing wells in the proximity of Well # 8, she was told of the projected starting date, and, that there was a slight risk in the venture. The evidence at trial also tends to show that Eleanor Rausch was also told of the depths of producing wells in the vicinity, that J & M Properties owned the oil and gas lease, that the Joneses ran the corporation, which would be drilling the well, that there would be additional costs if the well produced oil, that there were some tax consequences, that the owner of the land where the well was situated got a "certain percent," and that the Joneses were "legal and ethical."

From practical considerations it could be reasonably argued that the trial court reached the right result in that Rausches would have made the investment in any event and regardless of how much or how little information had been made available to them. However, it would appear that the spirit and letter of the Indiana Uniform Securities Act requires that the issuer is obligated to see that the investor is informed of all the material facts. In this case it simply was not done.

Initially, it must be observed that virtually all the information Eleanor Rausch received was from Don Holder. Holder, other than his investment, had no nexus with the Joneses that made him an authoritative or responsible source of information. Additionally, his testimony at trial was equivocal and, at times, factually incomplete. Darwin Rausch, Jr. did not even have this information at the time he sent the money to his mother for investment. The record is not clear as to what extent Holder's information was shared with Roderick Rausch.

Rausches, in their brief, make a strong argument that some material facts were never disclosed. Chief among these facts is the extent of the Joneses' financial participation in the ownership of the well and the land upon which it was located, and, the "disproportionate" sharing of profits by the Joneses as compared to their investment. Additionally, an overriding royalty interest, held by Mary Jones's mother, existed which was free of cost and development expenses.

We make this observation not from the position of weighing the evidence or judging the credibility of the witnesses, but instead from the context that most of the material facts known to Eleanor, such as they were, emanated from a source other than Jones, the issuer of the security. Paraphrasing I.C. 23–2–1–2(b)(10) the issuer need not comply with registration requirements if, among other things, the potential nonaccredited investor receives all of the material facts. We are of the opinion that the statute places the burden upon the issuer to see that all of the material facts are received by the nonaccredited investor. The evidence shows that Jones did not fulfill this requirement.

While a specific definition of what constitutes "all material facts" is lacking as to oil and gas leases in this jurisdiction, it has been held that "the central consideration in determining materiality is whether a reasonable investor would attach importance to the information when deciding on his course of action." *Arnold v. Dirrim* (1979), Ind.App., 398 N.E.2d 426, at 433. Exactitude, to the degree possible, in how prospective profits were to be divided and who was to receive them would certainly be material to the reasonable investor in our opinion.

We reverse and remand for such other action as is consistent with this opinion.

Reversed and remanded.

NEAL, J., concurs.

SULLIVAN, J., concurs in result.