### Dollie Stafford MANNS, Appellant–Petitioner,

v.

### Bradley W. SKOLNIK, Securities Commissioner, and Sue Ann Gilroy, Secretary of State, State of Indiana, Appellees–Respondents.

#### No. 53A05–9509–CV–351.

Court of Appeals of Indiana.

May 30, 1996.

Alphonso Manns, Bloomington, for Appellant.

Pamela Carter, Attorney General, Brian D. Scott, Deputy Attorney General, Indianapolis, for Appellees.

## OPINION

SHARPNACK, Chief Judge.

Dollie Stafford Manns appeals the trial court's judgment affirming the administrative order in favor of Bradley W. Skolnik, Securities Commissioner, Sue Ann Gilroy, Secretary of State, and the State (collectively the "appellees"). The order held that a document prepared by Manns constituted a "security" and, therefore, that Manns had violated several sections of Indiana's securities law. Manns raises seven issues which we consolidate and restate as the following four issues:

(1) whether the definition of a "security" as provided by Ind.Code § 23–2–1–1(k) is unconstitutionally vague and overbroad;

(2) whether the trial court denied Manns due course of law by sustaining the application of federal law to define a "security";

(3) whether the trial court erred by affirming the determination that the document constituted a note or an investment contract and, therefore, a security; and

(4) whether the trial court erred by affirming the determination that Manns had violated the registration provisions of I.C. § 23–2–1–3, the licensing provisions of I.C. § 23–2–2–8, and the antifraud provisions of I.C. § 23–2–1–12.

We affirm.

The facts most favorable to the judgment follow. In early April 1990, Janice Easterday visited her attorney's office to close on a real estate transaction. Manns' husband, Alphonso, represented Easterday in this transaction. As a result of the closing, Easterday received $20,000. Immediately thereafter, Easterday indicated to Alphonso that she needed to invest her money. Alphonso in-

structed Manns, who was also an attorney, to bring in Prudential Bache investment materials. When Manns did not find the materials, she told Easterday about an investment opportunity that Manns had in Indonesia where Darryl Price had been mining platinum.

The discussion continued as Manns accompanied Easterday to the bank where Easterday planned to make a deposit. After making the deposit, Manns continued to talk about the investment. Manns told Easterday that the investment was "a really lucrative deal" which was expected to produce a substantial profit. Record, p. 98. She also said that there were other investors and that she had personally invested money.

On April 5, 1990, Easterday returned to Manns' office and tendered a $20,000 check payable to the "Manns & Manns Escrow Account". Manns drafted a document called the "Compensation Agreement between Janice K. Easterday and Dollie Stafford Manns" ("agreement") and signed it. The agreement provided in part:

"In consideration of the investment of Janice K. Easterday towards the purchase of samples of Precious Metals, to wit: Platinum ... the undersigned Dollie Stafford Manns agrees as follows:

1. That the investment deposited by Janice K. Easterday shall be used for the purpose of purchasing sample commodities of equal value, minus the related cost of not more than $8,000.00.

2. Dollie Stafford Manns represents that the sample commodity which is the subject matter of this investment is valued in excess of $18,000.00.

3. That the sum of $12,000.00 will remain in an Account at Bank One for the benefit of Janice Easterday until such time as a *definite* closing has been set to finalize the sale of the initial samples.

4. After the sale of the initial samples the sum of $20,000.00 will be returned to Janice K. Easterday.

5. The sale of the samples is expected to begin on the 14th day of April, 1990.

6. Following the sale of the samples a contract for the sale of greater quantities will be negotiated with major buyers.

7. The sale to the major buyer will result in additional compensation to Janice K. Easterday of $200,000.00.

8. Janice K. Easterday will receive compensation from each sale of not less than $5,000.00 and not more than $200,000.00 [sic]

9. Based on the present schedule and agreements between the Buyer and the Seller, it is expected that full compensation will be paid to Janice K. Easterday within three (3) months after April 16, 1990.

10. When Janice K. Easterday has received the total amount of $200,000.00 as compensation from the sale of Platinum conducted by Dollie Stafford Manns, Janice K. Easterday will have been compensated in full.

11. Dollie Stafford Manns shall at all times protect the investment of Janice K. Easterday and not expose said investment to *any* unnecessary risk.

\* \* \* \* \* \*

15. There is no other agreement between Janice K. Easterday and Dollie Stafford Manns except the agreement represented here in writing."

Record, pp. 265, 585–586.

Easterday never received any other documents or financial statements about the investment. Further, Manns never informed Easterday about any risks involved with the platinum transaction. In addition, Easterday was not informed that the agreement had not been registered as a security with the Indiana Securities Division (the "division") or that Manns had failed to register as a broker with the division. Manns also did not disclose a pending civil lawsuit which named her as a defendant and charged her with fraud.

Manns neither returned Easterday's initial investment to her nor forwarded any of the anticipated profit to her. On December 29, 1992, Easterday filed a suit against Manns and soon after filed a complaint with the division. On August 2, 1993, the division

filed an administrative complaint against Manns, alleging that she violated Indiana's securities law. The division alleged that the agreement was a security pursuant to I.C. § 23–2–1–1(k) and, therefore, that Manns was required to register herself and the security with the division.

On September 3, 1993, the commissioner set the matter for a hearing.[1] On November 23, 1993, Manns filed a motion to dismiss alleging that the commissioner did not have jurisdiction.[2] After a continuance, the hearing was held on December 13, 1993. On September 7, 1994, the commissioner entered findings of fact and conclusions thereon. The commissioner found that the agreement was a security because it constituted a note and an investment contract. The commissioner also found that Manns violated several state securities laws.

On October 3, 1994, Manns appealed the commissioner's order to the trial court. Manns appealed the findings that (1) the agreement constituted a security; (2) she violated the registration and licensing requirements of Indiana's security law; and (3) she violated anti-trust provisions. In addition, Manns claimed the commissioner should have sustained her motion to dismiss on jurisdictional grounds. After a hearing on June 2, 1995, the trial court affirmed the commissioner's order.

## I.

The first issue raised by Manns is whether I.C. § 23–2–1–1(k) is unconstitutionally vague and overbroad in violation of the Due Process Clause of the fourteenth amendment. Manns argues that the definition of a "security" pursuant to I.C. § 23–2–1–1(k) is unclear because the definition uses words which themselves are undefined.

 However, before addressing the merits of Manns' argument, we consider first the

appellees' contention that Manns waived review of this issue because she failed to raise it in the trial court. Generally, a constitutional claim raised on appeal may not be considered unless the issue was presented at the trial level. *Kern v. Wolf,* 622 N.E.2d 201, 203 (Ind.Ct.App.1993), *reh'g denied, trans. denied.*

In her reply brief, Manns concedes that while the failure to raise an issue at trial generally waives review of the issue on appeal, exceptions have been made in cases where the parties could have reasonably anticipated that such an issue would have been raised. Manns claims that "[i]t is clear from the record that much discussion concerning vagueness and overbreadth was argued during the hearing of June 2, 1995, even though no specific references were made to the constitutionality of the statute." Reply brief, pp. 4–5.

 In support of her argument, Manns cites to a portion of the record where the appellees advised the trial court that its role on appeal was limited to determining whether the administrative findings were based on the evidence presented: "Your Honor, our function here today is not to reweigh the evidence or to substitute your Honor's judgment for that of the agency.... [But to determine] whether the State based its conclusions on the law and on the evidence before it. That is our sole functions [sic]". Record, pp. 708–709. Based on this statement, Manns concludes that even had she raised the vagueness and overbreadth issues, the trial court would not have addressed them because the court was "instructed that its only role was to enforce the Securities Commissions judgment." Reply brief, p. 5. However, this argument completely ignores the trial court's standard of review of an

---

1. To avoid confusion, the hearing official who entered the administrative findings and order will be referred to as the "commissioner" and Skolnik, the commissioner who is a party to this appeal, will be included in the reference to "appellees".

2. The record does not indicate how the commissioner ruled on the motion. In fact, Manns

claims that the commissioner did not rule on the motion at all. The record indicates that both parties addressed the jurisdiction issue to the trial court. The resolution of this issue, however, is not important to our review because Manns did not develop an argument about her motion to dismiss in this appeal.

administrative judgment[3] and the appellant's burden to demonstrate the invalidity of an agency determination. *See* I.C. § 4–21.5–5–14(a), (d). Therefore, Manns did not present the issue at the trial level and did not establish that the parties could have reasonably anticipated that the issue would have been raised.

■■■ While a constitutional challenge is generally waived on appeal if not raised at the trial level, the argument may nonetheless be addressed if the error asserted constitutes fundamental error. *James v. State,* 613 N.E.2d 15, 25 (Ind.1993) (holding that a party may not fail to object to a court's action and then raise the court's action as error on appeal unless the error is fundamental.) Fundamental error is error that is a "substantial blatant violation of basic principles rendering the trial unfair to the defendant." *Townsend v. State,* 632 N.E.2d 727, 730 (Ind. 1994). Constitutional errors are not necessarily fundamental errors and may be waived if not properly preserved on appeal. *Cheek v. State,* 567 N.E.2d 1192, 1195 (Ind.Ct.App. 1991); *see Matter of A.R.R.,* 634 N.E.2d 786, 791 (Ind.Ct.App.1994) (holding that questions regarding the constitutionality of a statute must be raised in trial court before filing a motion to correct errors). The appellant has the burden of proving that the error is fundamental. *Townsend,* 632 N.E.2d at 730. Manns failed to provide a persuasive argument that enforcement of the statute constitutes fundamental error. Therefore, we may not address the merits of this argument. *See id.*

## II.

The second issue raised is whether the trial court denied Manns due course of law because it sustained the commissioner's order without giving consideration to "the arbitrary and capricious application of federal common law by the Securities Commissioner" in defining the term "security." Specifically, Manns argues that the trial court did not identify an Indiana statutory definition of a "note" or an "investment contract" but instead adopted the commissioner's analysis which applied federal common law. As a result, Manns concludes that the trial court inappropriately upheld the commissioner's findings that the agreement constituted both a note and an investment contract.

However, for the reasons discussed, *supra,* we find that Manns failed to challenge the commissioner's application of the federal common law to the trial court. Moreover, she did not establish that the application of the federal common law constituted fundamental error. Because Manns did not argue to the trial court that the commissioner's application of federal law was erroneous, she cannot argue on appeal that the trial court's affirmance of that analysis constitutes reversible error. Therefore, we hold that Manns waived appellate review of this argument. *See Kern,* 622 N.E.2d at 203.

## III.

The third issue raised for our review is whether the trial court erred in upholding the commissioner's finding that the agreement constituted a note and an investment contract pursuant to I.C. § 23–2–1–1(k).

■■■ Judicial review of agency decisions is governed by the Administrative Orders & Procedures Act, codified by I.C. §§ 4–21.5–1–1, *et seq.* "When a trial court, in the first instance, or an appellate court, on appeal, reviews an agency decision, it is bound by the findings of fact made by the agency if those findings are supported by substantial evidence." *Civil Rights Comm'n v. Southern Indiana Gas & Elec. Co.,* 648 N.E.2d 674, 679 (Ind.App.Ct.1995), *trans. denied.* Judicial review of the agency's factual determinations is not intended to be a trial *de novo,* but rather an opportunity for the court to analyze the record and determine whether the administrative findings are supported by substantial evidence. I.C. § 4–21.5–5–11; *Indiana Dep't. of Natural Resources v. United Refuse Co.,* 615 N.E.2d 100, 103 (Ind. 1993). Neither this court nor the trial court

---

3. The trial court's standard of review for administrative judgments is well settled. As will be discussed, *infra,* the trial court is bound by the agency's findings of fact but is not bound by the agency's legal conclusions. *Natural Resources Comm'n v. AMAX Coal Co.,* 638 N.E.2d 418, 423 (Ind.1994), *reh'g denied.*

may reweigh the evidence or judge the credibility of the witnesses. *Board of Registration for Land Surveyors v. Bender,* 626 N.E.2d 491, 496 (Ind.Ct.App.1993). Final administrative factual determinations may not be reversed or modified unless contrary to law or unsupported by the evidence. *Natural Resources Comm'n v. AMAX Coal Co.,* 638 N.E.2d 418, 423 (Ind.1994).

■ However, deference is not granted to an agency's legal conclusions. *Id.; see Hamilton County Dep't of Pub. Welfare v. Smith,* 567 N.E.2d 165, 168 (Ind.Ct.App.1991). The review of these conclusions is governed by I.C. § 4–21.5–5–14(d), which provides in part:

"The court shall grant relief ... only if it determines that a person seeking judicial relief has been prejudiced by an agency action that is:

(1) Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) Contrary to constitutional right, power, privilege, or immunity;

(3) In excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) Without observance of procedure required by law; or

(5) Unsupported by substantial evidence."

I.C. § 4–21.5–5–14(d). The party asserting the invalidity of the agency determination has the burden to demonstrate the invalidity. I.C. § 4–21.5–5–14(a).

Turning to the merits of Manns' argument, a "security" is defined to include "a note ... evidence of indebtedness ... [or] investment contract." I.C. § 23–2–1–1(k). According to the definition, only one of the categories must be satisfied for the agreement to constitute a security. Nevertheless, the commissioner determined that the agreement before us constituted both a note and an investment contract. Manns argues that the commissioner's finding, as well as the trial court's affirmance of that finding, was not in accordance with the law for two reasons. First, Manns argues that the commissioner inappropriately applied federal tests in determining whether the agreement constituted a note or an investment contract. In the alter-

native, Manns argues that the commissioner erroneously found that the federal tests were satisfied. We disagree.

After a hearing on June 2, 1995, the trial court issued the following findings of fact and conclusions thereon which are relevant to our review:

"10. On April 5, 1990, Dollie Stafford Manns prepared the document entitled 'Compensation Agreement between Janice K. Easterday and Dollie Stafford Manns.'

11. The Compensation Agreement has never been registered as a security with the Securities Division.

12. The Compensation Agreement specified the terms of the investment. Under the Compensation Agreement, $8,000 would be used for costs related to the transaction while $12,000 would 'remain in an Account at Bank One for the benefit of Janice Easterday until such time as a definite closing has been set to finalize the sale of the initial samples.'

13. No portion of the $20,000 investment was ever set aside in a separate escrow account for the exclusive benefit of Janice Easterday....

\* \* \* \* \* \*

*CONCLUSIONS OF LAW*

1. Ind. Code § 23–2–1–15(g) is to be liberally construed to prevent the practice or commission of fraud and to ensure that sufficient and reliable information is disclosed to afford an investor with a reasonable opportunity to exercise independent judgment.

\* \* \* \* \* \*

5. The Findings of Fact, Conclusions of Law and Final Order of the Division were issued in conformity with the jurisdiction of the Division and proper legal procedure and were based upon substantial evidence.

6. The Division correctly determined that the Compensation Agreement constituted a 'security' pursuant to Indiana law.

7. Ind. Code § 23–2–1–1(k) defines a security to include either a note or an investment contract. In order to be considered a security, the Compensation Agreement is only required to satisfy one definition, not both.

8. The Division correctly determined that the Compensation Agreement satisfies both the definition of a note and an investment contract and, accordingly, is a security under Ind. Code § 23–2–1–1(k)."

Record, pp. 744–746 (citations omitted).

Because the crux of Manns' argument relates to the commissioner's order rather than the trial court's affirmance of that order, we will focus on the commissioner's analysis and conclusions. Moreover, to affirm the trial court's judgment, we need only establish that the commissioner correctly found that the agreement constituted either a note or an investment contract. *See* I.C. § 23–2–1–1(k). Because we find that the agreement constituted a note subject to the securities regulation, we need not address the merits of Mann's argument that the commissioner erroneously found the agreement to constitute an investment contract.

 At the outset, we note Manns' argument that the commissioner erroneously applied the federal test for determining whether the agreement constituted a note. Manns argues that the application of the federal test was erroneous because no Indiana case has adopted the test. However, as previously determined in the second issue, Manns failed to raise this argument at the trial level and failed to demonstrate that the error was fundamental.[4] Accordingly, the argument is waived and we need not reach

the merits of it. *See Cheek,* 567 N.E.2d at 1195.

We now turn to Manns' argument that the commissioner erroneously concluded that the test for determining whether the agreement constituted a note was satisfied. The leading federal test in this area is the "family resemblance" test enumerated by *Reves v. Ernst & Young,* 494 U.S. 56, 65–66, 110 S.Ct. 945, 951–952, 108 L.Ed.2d 47 (1990), *reh'g denied.*[5] The "family resemblance" test begins with the presumption that a note constitutes a security. *Id.* at 65, 110 U.S. at 951. This presumption may be rebutted only by showing that the note bears a "strong resemblance" to one of seven enumerated instruments deemed not to be "securities" within the meaning of the statute. *Id.* at 66, 110 S.Ct. at 951. The seven categories include: (1) a note delivered in consumer financing, (2) a note secured by a mortgage on a home, (3) a short-term note secured by a lien on a small business or some of its assets, (4) a note evidencing a "character" loan to a bank customer, (5) a short-term note secured by an assignment of accounts receivable, (6) a note which simply formalizes an open-account debt incurred in the ordinary course of business, or (7) a note evidencing loans by commercial banks for current operations. *Id.*

The *Reves* court set forth the following four factors to use in determining whether the instrument bears a "strong resemblance" to any of these seven categories: (1) the motivations that would prompt a reasonable seller and buyer to enter into the transaction, (2) the "plan of distribution" of the instrument, (3) the reasonable expectations of the investing public, and (4) the existence of another regulatory scheme significantly reduc-

---

4. In addition, Manns suggests we apply the definition of a "note" as established by Indiana's commercial law statute. The statute defines when a writing constitutes a "negotiable instrument". I.C. § 26–1–3–104. However, this definition is limited to commercial paper, and we refuse to extend the definition to the instant case.

5. The appellees argue that the trial court correctly determined that the agreement was a note. However, in support of this argument, the appellees applied the four part test enumerated by the supreme court in *Securities and Exchange Comm'n v. W.J. Howey Co.,* 328 U.S. 293, 299, 66

S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946), *reh'g denied.* This test is used to determine whether a document constitutes an investment contract and not whether the document constitutes a note. *See Reves,* 494 U.S. at 64, 110 S.Ct. at 951 (stating that "[w]e reject the approaches of those courts that have applied the *Howey* test to notes; *Howey* provides a mechanism for determining whether an instrument is an 'investment contract.'") Therefore, the appellees failed to address Manns' argument that the *Reves* family resemblance test had not been satisfied.

ing the risk of the instrument. *Id.* at 66–67, 110 S.Ct. at 951–952.

The commissioner applied the *Reves* test in its findings as follows:

"15. The Compensation Agreement is a note or evidence of indebtedness. Generally, for securities law purposes, the term note or evidence of indebtedness is broadly defined 'to include all contractual obligations to pay in the future for consideration presently received.' *U.S. v. Austin,* 462 F.2d 724, 736 (10th Cir.), *cert. denied,* 409 U.S. 1048 [93 S.Ct. 518, 545, 34 L.Ed.2d 501] (1972). The Compensation Agreement is a contractual obligation of Manns to pay Easterday in the future in exchange for Easterday's initial $20,000 payment. Thus, the Compensation Agreement is a note or evidence of indebtedness. 16. The determination that the Compensation Agreement is a note or evidence of indebtedness, however, does not end the inquiry because not all notes or evidences of indebtedness are securities.... The next question in the analysis is whether that note or evidence of indebtedness is one that should be treated as a security. In a recent decision, the Supreme Court explained the 'family resemblance' test that it applies to determine whether a note is a security.... *Reves v. Ernst & Young,* 494 U.S. 56, 67 [110 S.Ct. 945, 108 L.Ed.2d 47] *reh. denied,* 494 U.S. 1092 [110 S.Ct. 1840, 108 L.Ed.2d 968] (1990)....

\* \* \* \* \* \*

18. Under the Reves analysis, the Compensation Agreement is a security. Since it has already been established that the Compensation Agreement is a note or evidence of indebtedness, the Reves analysis starts with the presumption that the Compensation Agreement is a security. That presumption may be rebutted if the Compensation Agreement is on the list of debt instruments that are not securities or if it bears a strong family resemblance (based on the four factor analysis set forth above) to one of those instruments. Because the Compensation Agreement is not on the list of nonsecurities, the analysis focuses on whether it bears a strong family resemblance to any of those instruments based

on the four factors listed by the Supreme Court in *Reves.*"

Record, pp. 619–632. Applying the four factors, the commissioner concluded that the agreement did not provide a "strong" family resemblance to any of the seven categories:

"[T]he Compensation Agreement does not sufficiently resemble any of the instruments on the *Reves* list of non-securities to rebut the presumption that it is a security. It resembles those instruments based on only one of the four factors listed in *Reves* [the absence of a plan of distribution]. Since *Reves* requires a *strong* family resemblance to rebut the presumption, that one factor alone does not provide sufficient basis to pull the Compensation Agreement outside the scope of [the commissioner's] jurisdiction. Thus, the Compensation Agreement is a note or evidence of indebtedness, and therefore a security, under the Act."

Record, p. 632 (original emphasis).

Manns specifically challenges the commissioner's application of the four factors to the sixth category and contends that the agreement bears a strong resemblance to a note which simply formalizes an open-account debt incurred in the ordinary course of business. Thus, we must review the commissioner's application of the four factors to determine whether the commissioner improperly concluded that the agreement did not strongly resemble the sixth category and, therefore, that Manns failed to rebut the presumption that the agreement was a security.

The first factor is the motivation which would prompt a reasonable buyer and seller to enter into the transaction. With respect to this factor, the *Reves* court stated that an instrument is likely to constitute a security if the seller's purpose is "to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate." *Reves,* 494 U.S. at 66, 110 S.Ct. at 952. However, if the purpose of the transaction is to "facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cashflow difficulties, or to advance some other

commercial or consumer purpose," then the note is less likely to constitute a security. *Id.* The commissioner determined that Easterday's motivation for the transaction was the potential for profit and that Manns' motivation for the transaction was to apply the money "to the undertaking's general expenses" and to purchase platinum samples. Record, p. 629. Thus, the commissioner concluded that the money was used to "get the transaction off the ground"; the money was forwarded for use as start-up capital rather than to correct a cash flow difficulty.

Although Manns claims that her motivation for entering into the transaction was both to correct a cash flow problem by paying ordinary business expenses and to purchase a sample of platinum, this argument is merely a request to reweigh the evidence. We may not do so. *See Board of Registration for Land Surveyors v. Bender,* 626 N.E.2d 491, 496 (Ind.Ct.App.1993). We find sufficient evidence to support the trial court's conclusion that the motivation for the transaction was for use as start up capital. The agreement, which was personally drafted by Manns, provided that the funds were to remain in an account "for the benefit of Easterday until such time as a definite closing has been set to finalize the sale of the initial samples." Record, p. 265. Next, the agreement provided that "Following the sale of the samples a contract for the sale of greater quantities will be negotiated with major buyers." Record, p. 265. In addition, the agreement indicated that Easterday was to receive a profit from each sale to a major buyer. Therefore, pursuant to the terms of the agreement, part of Easterday's initial investment was to be used to purchase *initial* samples, which in turn were to be used to negotiate future sales with buyers. Each sale was the foundation for generating Easterday's profits. Based upon the agreement's provisions, the motivation for the transaction was closer to "getting the business off the ground" than to resolving a cash flow problem. Therefore, the commissioner properly concluded that this factor favored a finding that the agreement constituted a security.

The second factor in the "family resemblance" test is the existence of a plan of distribution. The inquiry here is whether the instrument has a "common trading for speculation or investment." *Reves,* 494 U.S. at 66, 110 S.Ct. at 952. The commissioner determined that the agreement was not the type of contract to be traded as a commodity and, thus, that there was no plan of distribution. To the extent that there was no plan of distribution, then, the commissioner found the agreement similar to those on the list of nonsecurities. Hence, the satisfaction of this factor favors the position that the agreement did not constitute a security.

The third factor is whether the general public would reasonably expect the instrument to be a security, thereby protected by the securities law. The commissioner concluded that "[p]ublic expectations suggest that investors in a purely passive investment, such as the Compensation Agreement, ... should be afforded the protections of the securities law." Record, pp. 630–631.

Manns concluded without a developed argument that the third factor had not been satisfied because "the transaction did not involve a public investment enterprise or an investing public." Appellant's brief, p. 31. However, the focus of this factor is whether an objective investing public would reasonably expect the instrument to be protected by the securities law, "even where an economic analysis of the circumstances of the particular transaction might suggest that the instruments are not 'securities' as used in that transaction." *Reves,* 494 U.S. at 66, 110 S.Ct. at 952. It is material only whether the investing public, generally speaking, would expect the agreement to be protected and not whether this particular transaction involved an investing public. Therefore, Manns has not met her burden to prove the invalidity of the determination. *See* I.C. § 4–21.5–5–14(a). Accordingly, the commissioner properly determined that this factor favored a finding that the agreement constituted a note.

The final factor in the family resemblance test is whether there exists some other factor, such as another regulatory scheme, which reduces the risk of the transaction. Manns maintains that the civil lawsuit filed by Easterday serves as "another regulatory

scheme." However, the Supreme Court has found the existence of "another regulatory scheme" primarily in instances where the transaction was subject to other *federal* regulation. *See e.g. Marine Bank v. Weaver,* 455 U.S. 551, 558–559, 102 S.Ct. 1220, 1224–1225, 71 L.Ed.2d 409 (1982) (finding that certificates of deposit were otherwise subject to federal banking laws and insured by the FDIC); *International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Daniel,* 439 U.S. 551, 569–570, 99 S.Ct. 790, 802, 58 L.Ed.2d 808 (1979) (finding that pension plans are regulated by ERISA and thus, "[t]he existence of this comprehensive legislation governing the use and terms of employee pension plans severely undercuts all arguments for extending the Securities Acts to ... pension plans.") In this case, there is no other federal regulatory scheme to protect Easterday from the risks associated with this transaction. We find no merit to Manns' argument that the ability to file a civil suit serves as "another regulatory scheme" and, thereby, reduces the risk of the transaction. Therefore, the commissioner properly determined that there was no other regulatory scheme.

Based on the application of the *Reves* four factor test, the commissioner concluded that the agreement did not strongly resemble any of the notes on the nonsecurities list. After reviewing the commissioner's analysis, we hold that the commissioner properly concluded that the agreement constituted a note subject to securities regulation. Therefore, the trial court did not err in affirming the commissioner's order.

### IV.

The final issue for our review is whether the commissioner erroneously concluded that Manns violated the registration provisions of I.C. § 23–2–1–3, the licensing provisions of I.C. § 23–2–1–8, and the antifraud provisions of I.C. § 23–2–1–12, and whether the trial court erroneously affirmed these conclusions. We take each of the violations in turn.

#### A. *Registration*

First, Manns argues that there was insufficient evidence to substantiate a violation of the registration provisions of I.C. § 23–2–1–

3. This section makes it unlawful for any person to offer or sell a security unless the security is registered or exempt from registration. I.C. § 23–2–1–3; *see* I.C. § 23–2–1–2 (describing the exemptions).

 Initially, Manns claims that while the commissioner found that she violated the registration requirements of the statute, the trial court failed to enter such a finding. However, while the trial court did not specifically find that Manns violated the registration requirements, it did find that the agreement had never been registered as a security with the Securities Division. In addition, the trial court recited the statutory requirement to register a security with the division. Finally, the trial court affirmed the commissioner's order in all respects. As the reviewing court, we will consider the trial court's findings as a whole and liberally construe them in favor of the judgment. *See Williams v. Rogier,* 611 N.E.2d 189, 196 (Ind.Ct.App.1993), *trans. denied.* In so doing, we find no harm in the trial court's failure to specifically declare that Manns violated the statutory regulation requirements because the court's conclusion is clear from its reference to the statutory obligation to register, as well as Manns' failure to register.

The crux of Manns' argument, however, is that the agreement was not required to be registered with the division because it did not constitute a security. In light of our resolution of that issue, Manns' argument has no merit. As previously determined, the agreement constituted a note and, hence, a security. As a result, Manns was statutorily required to register the security with the division. The record discloses that the agreement was never registered and that Manns did not provide any evidence exempting the security from registration. *See* 710 IAC 1–13–2(d). Therefore, Manns has not satisfied her burden to show that the commissioner's order is contrary to law and, accordingly, the trial court properly affirmed the order.

#### B. *Licensing*

Next, Manns challenges the commissioner's finding that she violated the licensing provision of I.C. § 23–2–1–8. This section makes it unlawful for a person to transact

business in Indiana as a broker-dealer or agent unless that person is registered with the division. I.C. § 23–2–1–8(a).

Again, Manns asserts that the trial court failed to enter a finding that she violated the licensing requirements of the statute. However, the commissioner specifically found that Manns violated the licensing requirements. In affirming the commissioner's determination, the trial court found that Manns never registered with the division as a broker-dealer or agent, that the statute makes it unlawful for a person to offer or sell a security unless registered, and that Manns failed to inform Easterday that she was not registered as a broker-dealer or agent. In effect, the trial court found that Manns violated the statute and, therefore, Manns' argument has no merit.

In addition, Manns contends that because the agreement did not constitute a security, she was under no obligation to register as a broker-dealer or agent. This contention also has no merit because we previously determined that the agreement constituted a security. Thus, Manns had an affirmative duty to register with the division. *See* I.C. § 23–2–1–8.

Finally, Manns argues that there is no evidence to support the finding that she acted as a broker-dealer or agent.[6] A "broker-dealer" is defined as "a person engaged in the business of effecting offers, sales, or purchases of securities for the account of others or for the person's own account." I.C. § 23–2–1–1(c). An "agent" is defined as "an individual, other than a broker-dealer, who represents a broker-dealer or issuer in effecting or attempting to effect purchase or sales of securities." I.C. § 23–2–1–1(b). Manns argues that there is no evidence to support the finding that she "engaged in the business of effecting offers, sales or purchases of securities".

However, the commissioner found that before Easterday went to the bank to deposit the $20,000, Manns told her about the Indonesian platinum transaction. Manns told Easterday that she needed additional funds and additional investors, that the transaction would be profitable, and that she was trying to purchase samples of Indonesian platinum. As previously mentioned, the commissioner properly found the agreement to constitute a security.

Upon our review, we find that Manns' acts demonstrate an affirmative action to secure financing for the platinum transaction. Because the agreement constituted a security, we find that the evidence supports the commissioner's conclusion that Manns was trying to "effect the purchase" of a security for her own benefit and, therefore, that Manns' offer and sale of the agreement violated the securities regulation. As a result, we hold that the trial court properly affirmed the commissioner's order.

### C. *Fraud Violations*

Finally, Manns challenges the commissioner's determination that she violated I.C. § 23–2–1–12. The commissioner concluded that Manns omitted statements of material fact and made material misrepresentations by failing to: (1) disclose that the agreement was not registered as a security and that she was not registered as a broker-dealer with the division; (2) disclose that she was named as a defendant in a Texas civil lawsuit which involved allegations of fraud in connection with the purchase of gold; (3) disclose the risks of the transaction to Easterday and the misrepresentation that there was no risk; and (4) comply with the terms of the agreement which required that Manns hold $12,000.00 in an escrow account for Easterday's benefit. The trial court affirmed the commissioner's order.

On appeal, Manns claims that at that time she drafted the agreement, "she did not know and in the exercise of reasonable care could not have known that the private transaction under which she engaged with Easter-

---

6. Manns similarly argued that there was no evidence to support the finding that she was an investment advisor or an investment advisor representative. These positions are also regulated by I.C. § 23–2–1–8 to the extent that one must register with the division as an investment advisor or representative to practice as such. *See* I.C. § 23–2–1–8(c), (d). However, neither the commissioner nor the trial court found that Manns was an investment advisor or a representative and, thus, this argument is irrelevant for our review.

day would be perceived as falling under the securities laws." Appellant's brief, p. 47. Manns argues that there is no evidence that she intended to defraud Easterday.

While not developed by either party, Manns' statement that she did not intend to defraud Easterday presents an issue of first impression for this court, that being the requisite mental state required under the securities fraud statute. In conducting our own research, we have found no case directly on point.[7]

The securities fraud statute makes it unlawful for an individual in connection with an offer, sale, or purchase of any security:

"(1) To employ any device, scheme or artifice to defraud, or

(2) To make any untrue statements of a material fact or to omit to state a material fact necessary in order to make the statements made in the light of circumstances under which they are made, not misleading, or

(3) To engage in any act, practice or course of business which operates or would operate as fraud or deceit upon any person."

I.C. § 23–2–1–12. Here, Manns challenges the finding that she violated I.C. § 23–2–1–12(2) because she had no intent.

To answer the question of intent required under I.C. § 23–2–1–12, we must turn to the rules of statutory construction. In construing an Indiana statute, our duty is to ascertain and give effect to the legislative intent. *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 524, 418 N.E.2d 207, 210 (1981). In determining the legislative intent, the language of the statute itself must be examined, including the grammatical structure of the clause or sentence in issue. *Foremost Life Ins. Co. v.*

*Department of Ins.*, 274 Ind. 181, 186, 409 N.E.2d 1092, 1096 (1980). Moreover, a statute is to be examined and interpreted as a whole. *Kinder v. Doe*, 540 N.E.2d 111, 114 (Ind.Ct.App.1989).

▆▆▆ Viewing the statutory framework, it seems clear that the legislative intent was to regulate the information which must be disclosed in connection with a security transaction. The statute requires that material information be disclosed. This statute turns entirely on whether the information disclosed was accurate, if disclosed at all. If material information is either misrepresented or omitted entirely, then the statute has been violated. The statutory language only requires that the individual disclose material information "in order to make the statements made in the light of circumstance under which they are made, not misleading." I.C. § 23–2–1–12(2). Hence, the plain language of the statute leads us to conclude that a violation occurs irrespective of the individual's intent to defraud.

Moreover, our determination is supported by comparing I.C. § 23–2–1–12(2), the subsection at issue in this case, to the remaining two subsections in the statute. The first subsection, I.C. § 23–2–1–12(1) makes it unlawful to "employ any device, scheme or artifice *to defraud*"; the other subsection makes it unlawful to engage in a manner which "operates or would operate *as fraud or deceit upon any person.*" I.C. § 23–2–1–12(1), (3) (emphasis added). Such language is absent from the subsection at issue in this case. Given the fact that the other two subsections expressly include as an element an intent to defraud but subsection two does not, we conclude that an intent to defraud is not a required element under I.C. § 23–2–1–12(2). *See Trabue v. State*, 164 Ind.App. 409, 328

---

7. Interestingly, in a recent case, Chief Judge Barker of the United States District Court for the Southern District of Indiana declined to resolve the question of intent under this statute. *Pippenger v. McQuik's Oilube, Inc.*, 854 F.Supp. 1411 (S.D.Ind.1994). Specifically, Chief Judge Barker wrote:

"The parties are somewhat at odds over the requisite state of mind which must be established in order to prove a violation of the statute. Pippenger maintains that mere negligence is all that is necessary to prove a viola-

tion, citing *Crook [v. Shearson Loeb Rhoades Inc.]*, 591 F.Supp. [40] at 49 [(N.D.Ind.1983)] The defendants contend that scienter as it has been interpreted under the federal securities laws may be the applicable standard. See, *Perry v. Eastman Kodak Co.*, 1991 WL 629728 1991 U.S.Dist. LEXIS 20914 (S.D.Ind.1991). The Court does not need to resolve the question at this juncture in order to dispose of the current motions, and so it does not."
*Id.* at 1426, n. 2.

N.E.2d 743, 744 (1975) (holding that when a limitation is imposed in a particular instance, the limitation will not be read into other statements in which it is not specifically provided.) Rather, for a violation of I.C. § 23–2–1–12(2) to occur, an individual must only make material misrepresentations or omit material information, regardless of intent.

Thus, we now turn to whether Manns violated the statute by either omitting or misrepresenting material information that a reasonable investor would have considered important in making an investment decision. *See Arnold v. Dirrim*, 398 N.E.2d 426, 433 (Ind.Ct.App.1979).

■ First, Manns challenges the determination that she omitted a material fact by failing to disclose that the security was not registered with the division and that she was not registered as a broker-dealer. Manns' argument is based on the fact that she did not intend the agreement to constitute a security and, thus, had no reason to disclose such information.

As previously discussed, however, the commissioner applied the *Reves* family resemblance test, an objective test, to find that the agreement constituted a security. Once this initial determination was made, registration with the division was required irrespective of Manns' intent. Manns did not disclose her failure to register the security or herself with the division. A reasonable investor would consider the broker's registration with the division important in making the investment decision because the registration serves as a means to verify the experience, legitimacy, and veracity of the broker. In addition, the fact that the security was not registered with the division would reflect on the validity of the transaction. Accordingly, this information was material and the omission, therefore, constitutes a violation of the statute. *See Arnold*, 398 N.E.2d at 433; *see generally S.E.C. v. Pearson*, 426 F.2d 1339, 1342–43 (10th Cir.1970) (holding that a licensed secu-

rity dealer violated the statute by selling unregistered stock).

■ Second, Manns challenges the commissioner's determination that she omitted a material fact by failing to inform Easterday of her involvement in the civil lawsuit filed in Texas, where Manns was sued for fraud in connection with the purchase and sale of gold. Manns argues that the lawsuit did not involve her relationship with Easterday and was not relevant merely because it alleged fraud.

The commissioner found that a reasonable investor in a precious metals transaction would want to know about a lawsuit pending against the individual soliciting the investment, where the lawsuit involved allegations of fraud in connection with soliciting investments in another precious metal.[8] Moreover, the commissioner found that there was a substantial likelihood that Manns' disclosure would have "altered the 'total mix' of the information made available" to the reasonable investor and, thus, that the information was material. *See TSC Indus.*, 426 U.S. at 449, 96 S.Ct. at 2132.

The commissioner properly determined that Manns' nondisclosure constituted a material omission. A reasonable investor would find this information to be highly relevant to ensuring the honesty of the broker and the reliability of the transaction. In fact, Easterday confirmed the importance of this information when she testified that she would not have invested with Manns had she known about the pending lawsuit.

Because this information is relevant to the investment decision, the omission of the information is material and, therefore, Manns violated the statute. Accordingly, the commissioner's order is not contrary to law. *See generally Kahn v. State*, 493 N.E.2d 790, 799 (Ind.Ct.App.1986), *reh'g denied, trans. denied* (holding that defendant's failure to dis-

---

8. The commissioner applied an objective test for discerning the materiality of information to a transaction. Citing *TSC Indus Inc., v. Northway, Inc.*, 426 U.S. 438, 445, 96 S.Ct. 2126, 2130, 48 L.Ed.2d 757 (1976), the commissioner applied the test of whether a reasonable purchaser or seller would consider the omitted or misstated fact material. "There must be a substantial likelihood that the disclosure of the [misstatement or the] omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of the information made available." *Id.* at 449, 96 S.Ct. at 2132.

close previous violations of Illinois securities code constituted fraud).

■ Third, Manns challenges the determination that she committed fraud for failing to disclose the risks associated with the transaction. Manns argues that Easterday clearly knew of the risk and accepted it. Specifically, Manns relies on the testimony of Steven Tracy Clay, a bank official who informed Easterday that her "investment in a bank certificate of deposit would be insured and would be safe, and that there always is some speculation in some other types of investments and some risks that might be involved in investing." Record, p. 245. However, this argument merely constitutes a request to reweigh the evidence, which we cannot do. *See Bender*, 626 N.E.2d at 496. Instead, we consider only whether this finding is supported by evidence. *See* I.C. § 4–21.5–5–11.

Manns testified that she did not disclose the risks associated with the platinum transaction because she "didn't think there was a risk involved." Record, p. 174. Manns did not provide Easterday with any financial information from which Easterday could independently assess the viability of the transaction. Without question, this information is material to the instant transaction. Easterday invested in an international platinum transaction in which she had no experience. Easterday had no information by which to increase her knowledge or aid in an informed, well considered investment. Thus, the evidence is sufficient to support the commissioner's conclusion that Manns violated the statute by failing to disclose the risks to Easterday and, as a result, the trial court properly affirmed the order. *See Rausch v. Jones*, 509 N.E.2d 236, 238 (Ind.Ct.App. 1987), *reh'g denied* (holding that the manner in which the prospective profits were to be divided and to whom the profits would be divided was a material fact needed by the investor to decide on a proper course of action.)

■ Finally, Manns challenges the finding that she violated the statute by failing to inform Easterday that the escrow account was never established as required under the agreement. The agreement required that $12,000 of the money Easterday invested be deposited into a special escrow account "until a definite closing was set to finalize the sale of the initial samples." Record, p. 265. Notwithstanding these terms, the $12,000 was never deposited into a special escrow account for Easterday's benefit. The record indicates that the money intended to be held in escrow was spent within three months from the time the money was given to Manns. Upon our review, we find substantial evidence to support the commissioner's determination that Manns violated the statute by failing to inform Easterday that the account had never been established or that the money had never been spent. Therefore, the commissioner properly determined that Manns committed several violations of I.C. § 23–2–1–12(2) by engaging Easterday in this transaction.

Accordingly, we find that the trial court properly affirmed the commissioner's findings that Manns violated the registration and licensing provisions of the statute, as well as the antifraud sections.

As a separate matter, Manns maintains that it was not "necessary" for the commissioner to file a claim against her since she made several attempts to pay Easterday back the $20,000 in an effort to prevent further legal action. Manns relies on I.C. § 23–2–1–19, which provides in part:

"**Civil penalty.**—(a) A person who offers or sells a security in violation of this chapter, ... is liable to any other party to the transaction who did not knowingly participate in the violation ... [and] may sue either at law or in equity to rescind the transaction or to recover the consideration paid....

\* \* \* \* \* \*

(g) ... No person may sue under this section:

(1) If that person received a written offer, before suit and at a time when the person owned the security, to refund the consideration paid together with interest on that amount from the date of payment to the date or repayment...."

I.C. § 23–2–1–19(a), (g). This statute reflects a public policy which encourages negotiation. Manns concedes that this statute applies to a civil action filed by a private individual rather than to an action filed by the division. Nonetheless, she maintains that the public policy embodied by this statute should apply to civil claims initiated by the government. Moreover, Manns claims that this suit initiated by the division was unnecessary and inappropriate because she made two oral offers and one written offer to settle with Easterday.

█ Upon consideration, we refuse to extend this statutory limitation to those suits brought by the division. We make our determination based primarily on the statutory framework of this section. In construing a statute, it is just as important to recognize what the statute does not say as to recognize what it does say. *Irmscher v. McCue*, 504 N.E.2d 1034, 1037 (Ind.Ct.App.1987). The statute is clearly limited to civil suits filed by private individuals. As written, the statutory limitation on the right to sue is clearly applicable only to "any other party to the transaction" and not to the division. *See* I.C. § 23–2–1–19(a). Had the legislature intended on extending this limitation to civil suits initiated by the government, it could have included such a limitation within the statute. Moreover, the State has a separate interest to ensure the enforcement of its laws which regulate the sale of securities. Therefore, we will not extend the scope of the statute as written. Accordingly, the trial court properly affirmed the commissioner's order.

For the foregoing reasons, the judgment of the trial court is affirmed in all respects.

AFFIRMED.

RILEY and KIRSCH, JJ., concur.