**FOR PUBLICATION**



FILED

Dec 27 2012, 8:53 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**JACKIE M. BENNETT, JR.**
**MICHELE L. RICHEY**
Taft Stettinius & Hollister, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| MEDEA WOODS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 39A05-1204-CR-189 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

INTERLOCUTORY APPEAL FROM THE JEFFERSON CIRCUIT COURT
The Honorable Ted R. Todd, Judge
Cause No.  39C01-1102-FC-110

**December 27, 2012**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Medea Woods appeals the trial court's denial of her partial motion to dismiss. She contends that some of the charged crimes for health-care billing fraud fall outside of the statute of limitations, the State fails to provide sufficient facts in the charging information to allege the concealment exception, and the crimes do not constitute a continuing wrong. Because this is an interlocutory appeal from a motion to dismiss, the State must only allege sufficient facts in the charging information that the charged crimes were committed within the statute of limitations. However, we disagree with *Reeves v. State*, 938 N.E.2d 10, 15-16 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*, and hold that the probable-cause affidavit can be considered in addition to the charging information to determine whether the State has alleged sufficient facts to place the charged crimes within the statute of limitations. We find that the State has alleged sufficient facts when the charging information and probable-cause affidavit are considered together and therefore affirm.

**Facts and Procedural History**

Woods is a licensed clinical psychologist who was a Medicaid provider in Indiana between 2002 and 2007. The Medicaid provider agreement required Woods to maintain records to support the claims she filed and to make those records available for review and audit. Appellant's App. p. 14-15. It also required Woods to return any erroneous payment she received within fifteen days. State's Ex. 1. In order to bill Medicaid for payment, Woods had to follow the State's procedures for submitting claims, including using Recipient Identification Numbers and procedure codes to bill for services rendered.

2

Appellant's App. p. 15. Submitted claims were presumed valid unless it was shown otherwise. Tr. p. 57-58.

In March 2006, the government's Medicaid billing auditor, Health Care Excel, began investigating Woods's submissions due to "an unusually high level of billing compared to other mental health care providers in her area." Appellant's App. p. 15. An onsite audit of Woods's files was conducted in May 2006, and Woods was unable to produce fifteen of the forty-one files requested for review. Health Care Excel found several billing concerns and violations, and as a result, Woods was put on pre-payment review, meaning that Woods's claims were subject to heightened scrutiny before payment. *Id.* at 16.

In August 2006, the audit information was given to the Indiana Medicaid Fraud Control Unit, and the case was assigned to Investigator Diane Hedges. Hedges conducted her own investigation by reviewing Woods's billing submissions and interviewing patients and/or their parent or guardian as well as Woods herself. After her investigation, Hedges concluded that Woods had fraudulently billed Medicaid by submitting illegitimate claims along with legitimate claims using her patients' Recipient Identification Numbers from 2002 to 2007.

On March 17, 2007, Woods voluntarily terminated her Medicaid provider agreement with the State. Later in 2007, she moved to Wyoming. Meanwhile, Hedges's investigation continued, and in December 2007, she contacted the Office of the Inspector General, which joined her in the on-going investigation. On August 1, 2008, Hedges presented her case to the United States Attorney's Office for review of possible criminal

charges. In March 2009, Hedges found Woods in Rawlins, Wyoming, and she and Special Agent Shelia Green interviewed Woods, who said that she had been under financial pressure and had a "readiness to make a mistake" in her favor when she submitted her Medicaid claims. Tr. p. 23. Hedges completed her investigation in May 2008, and the calculated value of loss was determined to be in excess of $350,000.

On November 9, 2009, a federal grand jury indicted Woods with health-care fraud for the fraudulent Medicaid claims she submitted between 2002 and 2007. The federal charges were dismissed on July 12, 2010. The State filed its own charges against Woods on February 9, 2011, for several counts of health-care billing fraud for the same activity between 2002 and 2007. Woods moved for a partial dismissal of the charges on the basis that any charged activities before February 9, 2006, were barred by the five-year statute of limitations. Following a hearing, the trial court denied the motion. Woods asked the trial court to certify its order on the partial motion to dismiss for interlocutory appeal, which the trial court granted. This Court accepted jurisdiction over the interlocutory appeal on May 18, 2012.

**Discussion and Decision**

Woods contends that the trial court erred by denying her partial motion to dismiss the charges against her because: (1) the information and probable-cause affidavit failed to provide sufficient information to allow the application of the concealment exception; (2) the charges based on activities before February 9, 2006, are time-barred under the five-year statute of limitations; and (3) the offenses charged constitute discrete, individual claims instead of a continuing wrong. Because this is an interlocutory appeal of a motion

4

to dismiss, however, we review only the first issue. The State must only make sufficient allegations in the charging information that the alleged crimes fall within the statute of limitations; whether the State has actually met its burden of proving that the alleged crimes fall within the statute of limitations is a question for trial. *Reeves v. State*, 938 N.E.2d 10, 15-16 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*.

When reviewing a trial court's ruling on a motion to dismiss, we use an abuse of discretion standard.[1] *Id.* at 14. We will only reverse if the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Id.* Indiana Code section 35-41-4-2(h)(2) allows tolling of the statute of limitations to serve "the State's interest of ensuring that it can later prosecute a criminal suspect even if, for a time, he conceals evidence of the offense such that authorities are unaware and unable to determine that a crime has been committed." *Id.* at 17 (quoting *Kifer v. State*, 740 N.E.2d 586, 588 (Ind. Ct. App. 2000) (quotation omitted)). As this Court explicitly held in *Reeves*, the State must "plead the circumstances of the concealment exception in the *charging information*," *id.* at 17 (emphasis added), and that pleading must contain sufficient facts so that the "defendant is apprised of the facts upon which the State intends to rely on and may be prepared to meet that proof at trial."[2] *Willner v. State*, 602 N.E.2d 507, 509 (Ind.

---

[1] Woods argues that we should use a de novo standard of review because this is a case of statutory interpretation. Appellant's Br. p. 5. However, we review a motion to dismiss a criminal charge under the statute of limitations for an abuse of discretion. *State v. Lindsay*, 862 N.E.2d 314, 317 (Ind. Ct. App. 2007), *trans. denied*. Further, Woods does not make a statutory interpretation argument; rather, she argues that the facts do not support the concealment exception. But, even if we were to use the de novo standard of review, the outcome would be the same.

[2] We recognize that our Supreme Court has noted that the "evidence of the offense" language of the concealment exception articulated at Indiana Code section 35-41-4-2(h)(2) may apply to "concealment of any evidence, including evidence of guilt, and thus would toll the statute of limitations in any crime in which a defendant tries to avoid apprehension." *Sloan v. State*, 947 N.E.2d 917, 922 n.8

1992). Additionally, the charging information must also state "the date of the offense with sufficient particularity to show that the offense was committed within the period of limitations applicable to that offense." Ind. Code § 35-34-1-2(a)(5).

Our Supreme Court examined a related charging information requirement in a similar context when determining whether the charging information sufficiently stated the alleged offense in *Patterson v. State*, 495 N.E.2d 714, 719 (Ind. 1986). Indiana Code section 35-34-1-2(a)(4) states that the charging information must "set[] forth the nature and elements of the offense charged in plain and concise language without unnecessary repetition." In *Patterson*, the charging information alleging murder did not set forth the manner of death, rendering it insufficient under Subsection (a)(4). Our Supreme Court held, however, that while the charging information did not contain sufficient factual detail of the alleged offense, the probable-cause affidavit that supported the charging information did contain the necessary details to apprise Patterson of the charges against her. Since Patterson was made aware of the charges against her by virtue of the two documents viewed together, her substantial rights were not prejudiced by the deficiency in the charging information. *Patterson*, 495 N.E.2d at 719.

Indiana Code section 35-34-1-2 as a whole sets forth the required contents of the charging information, the overarching purpose of which is to give the defendant particular notice of the crimes with which she is charged during the applicable statute of limitations period so that she can prepare an appropriate defense. *See Bei Bei Shuai v.*

---

(Ind. 2011). However, we agree with the holding in *Kifer*, 740 N.E.2d at 588-89, that interpreting "evidence of the offense" to include any evidence, including evidence of guilt, would allow the exception to swallow the rule, tolling the statute of limitations in "nearly all crimes in which a defendant attempts to avoid apprehension." *Id.* at 589.

*State*, 966 N.E.2d 619, 626 (Ind. Ct. App. 2012), *trans. denied*; *Reeves*, 938 N.E.2d at 16. If the probable-cause affidavit can be used to supplement the charging information in *Patterson* where the offense was not alleged with sufficient detail – charging information is insufficient under Indiana Code section 35-34-1-2(a)(4) – we see no reason why the same cannot be true in a case where the concealment exception has not been alleged with sufficient detail to place the charged crimes within the applicable statute of limitations – charging information is insufficient under Indiana Code section 35-34-1-2(a)(5). As long as the defendant is given enough information and notice to prepare an appropriate defense and does not have any of her substantial rights prejudiced, we see no reason why the probable-cause affidavit should not be considered in the analysis.

Since the charging information and probable-cause affidavit are filed together, they should be viewed in tandem to determine if they satisfy the goal of putting the defendant on notice of the crimes with which she is charged during the applicable statute of limitations period so that she can prepare an appropriate defense. We therefore disagree with the holding in *Reeves* that we must look only to the charging information in this case, as that would hinder the true intent behind charging informations, Indiana Code section 35-34-1-2, and *Patterson*.

Here, the charging information and probable-cause affidavit taken together provided both sufficient facts to allege concealment and apprise Woods that the State was going to argue that theory at trial. The charging information alleges that Woods "did knowingly or intentionally conceal information, to wit: that not all services claimed for her Medicaid patients were actually rendered," and "did knowingly or intentionally use

7

the identifying information, to wit: the Medicaid Recipient Identification Number ("RID") of many of her Medicaid patients, without their consent, with the intent to harm or defraud another person." Appellant's App. p. 12. Additionally, the probable-cause affidavit gave further detail as to how Woods filed fraudulent claims; specifically, that Woods filed illegitimate claims along with legitimate claims for many patients using their unique RID numbers. *Id.* at 15, 17-18. In particular, the State's claim is that Woods concealed her crime by hiding illegitimate Medicaid claims within a sea of legitimate claims, using patients' RID numbers on the illegitimate claims to make it appear that those claims were also legitimate.

Further, the probable-cause affidavit indicated that the evidence that Woods was submitting fraudulent claims was not known until March 2006 when Health Care Excel conducted an audit of her practice due to unusually high billing levels. *Id.* at 15. Since February 9, 2011, when the charges were filed, is within five years of March 2006, these facts are sufficient to allege concealment and that the crimes charged were committed within the applicable statute of limitations.

We find that when viewing the charging information and probable-cause affidavit together, the State has sufficiently alleged concealment to put Woods on notice that the State will argue that theory at trial. Proving concealment and therefore that the crimes charged fell within the applicable statute of limitations are questions that the State has the burden of proving at trial, not at this point of the proceedings. We therefore affirm the trial court's denial of Woods's partial motion to dismiss.

Affirmed.

MATHIAS, J., and BARNES, J., concur