**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**B. JOSEPH DAVIS**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID OXLEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 38A04-1310-CR-495 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JAY CIRCUIT COURT
The Honorable Brian Hutchison, Judge
Cause No. 38C01-1205-FC-14

**October 2, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant–Defendant, David Oxley (Oxley), brings this interlocutory appeal of the denial of this motion to dismiss contending that he may not be retried for reckless homicide.

We affirm.

## ISSUE

Oxley raises one issue on appeal which we state as: Whether the trial court properly denied Oxley's motion to dismiss.

## FACTS AND PROCEDURAL HISTORY

On January 7, 2012, Oxley and Mathew Marshall (Marshall), were at Oxley's house working on snowmobiles. At some point, Josh Shaver (Shaver) arrived at the residence. All three talked while Oxley and Marshall continued to work on the snowmobiles. At around 4:00 p.m., Marshall drove to his house and dropped off his vehicle. Shaver then picked up Marshall from his house and they drove to a bar in Winchester, Indiana. Oxley had a date scheduled for that day, but after it was cancelled, he decided to join Marshall and Shaver at the bar. All three men had something to eat and had some drinks. Later, the men decided to move to another bar. Marshall rode with Shaver, while Oxley drove by himself to the Top Hat Bar in Ridgeville, Indiana, where they continued to drink. At around 8:30 p.m., they decided to drive to the house of another friend, Luke Bonvillian (Bonvillian). Before doing that though, Shaver dropped Marshall off at his house so

2

Marshall could pick up his truck. Shaver, Marshall, and Oxley drove separately to Bonvillian's house.

Going to Bonvillian's house, Marshall and Oxley were traveling northbound on County Road 250 West in Jay County. Marshall was driving in front of Oxley up until Oxley chose to pass Marshall's truck. Marshall was driving between 45 and 50 miles per hour when Oxley passed him. After passing Marshall, Oxley pulled back into the northbound lane in front of Marshall, but then he pulled back into the southbound lane in an attempt to pass Jordan Hess's (Hess) truck which was ahead of him. When Oxley was overtaking Hess, he was driving around 55 miles per hour. Marshall was approximately 200 yards behind Oxley. As soon as Oxley tried to pass Hess, Hess sped up, and Oxley responded by equally speeding up. Marshall also sped up to 85 miles per hour to catch up with Oxley and Hess, but he was unable to gain any ground on them. According to Marshall, Oxley and Hess were driving beside one another for some distance. Also, Tyler Bruggeman, a passenger in Hess's truck, stated that Oxley and Hess would each pull ahead of one another and then fall behind again. As the two trucks crested a hill, with Oxley driving north in the southbound lane, they saw headlights coming at them. Michael Limbert (Limbert) was driving a Dodge in the southbound lane. At that point, Oxley collided with Limbert's car head-on, forcing Limbert's vehicle to go off the road. Oxley's vehicle continued moving north and Hess's truck then struck Oxley's truck causing Hess's truck to roll.

Limbert died as a result of the collision. Hess suffered from a broken back, four broken ribs, a broken nose, and cuts to his face. Nicole Bertke (Bertke), a second passenger in Hess's vehicle, suffered a fractured vertebrae, and torn ligaments to two other vertebrae, had a piece of glass in her elbow, and a large cut on her shoulder.

On May 24, 2012, the State charged Oxley with Count I, reckless homicide, a Class C felony, Ind. Code § 35-42-1-5, and Counts II and III, criminal recklessness resulting in serious bodily injury, Class D felonies, I.C. § 35-42-2-2(d)(l). A jury trial was held from August 7, 2013, through August 9, 2013. At the close of the evidence, the jury returned a not guilty verdict on both Counts of criminal recklessness resulting in serious bodily injury but deadlocked on the reckless homicide charge.

On September 26, 2013, Oxley filed a motion to dismiss the charge of reckless homicide claiming that the jury verdict on the criminal recklessness counts estopped the State from retrying him. On September 27, 2013, the trial court denied Oxley's motion to dismiss.

Oxley now appeals. Additional information will be provided as necessary.

DISCUSSION AND DECISION

We review a trial court's denial of a motion to dismiss for an abuse of discretion. *Woods v. State*, 980 N.E.2d 439, 442 (Ind. Ct. App. 2012). We will find an abuse of discretion only if the trial court's decision was clearly against the logic and effect of the facts and circumstances. *Id.* Oxley argues that the trial court abused its discretion in

4

denying his motion to dismiss, which was made on the basis that retrying him for reckless homicide after his acquittal on two counts of criminal recklessness causing serious bodily injury, is prohibited under the federal double jeopardy clause of the Federal Constitution.

The Fifth Amendment to the United States Constitution provides, in relevant part, that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."[1] Federal double jeopardy jurisprudence bars a defendant from being prosecuted for an offense after being acquitted for the same offense. *Griffin v. State*, 717 N.E.2d 73, 77 (Ind. 1999). When an appellant alleges a federal double jeopardy clause violation, we consider whether each statutory provision at issue requires proof of an additional fact that the other statutory provision does not. *McIntire v. State*, 717 N.E.2d 96, 98 (Ind. 1999).

Oxley argues that the "single rationally conceivable issue in dispute for the jury was recklessness." (Appellant's Br. p. 14). Mainly, Oxley tries to make the argument that because reckless homicide and criminal recklessness causing serious bodily injury share the same element, *i.e., recklessness,* the jury determined and disposed of that issue by acquitting him of two counts, and thereby concluding that he was not reckless. In essence, Oxley contends that the verdict form was the functional equivalent of not only an acquittal of criminal recklessness, but also an acquittal of reckless homicide.

Turning to Oxley's argument, we find it to be "more appropriately framed not as double jeopardy prohibition but rather as a matter of applying the doctrine of collateral

---

[1] A similarly worded provision in the Indiana Constitution provides: "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, § 14. Oxley does not cite or make any claim under the Indiana Double Jeopardy Clause. Thus, we shall only address the double jeopardy claim under the Federal Constitution.

estoppel." *McWhorter v State* 993 N.E2d 1141, 1147 (Ind. 2013).  Our supreme court has explained that

> Collateral estoppel (also referred to as issue preclusion) has been characterized as an "awkward phrase" however "it stands for an extremely important principle in our adversary system of justice.  It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.  Collateral estoppel is not the same as double jeopardy, but rather it is embodied within the protection against double jeopardy.  The traditional bar of jeopardy prohibits the prosecution of the crime itself, whereas collateral estoppel, in a more modest fashion simply forbids the government from relitigating certain facts in order to establish the fact of the crime.  In essence the doctrine of collateral estoppel precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial.  To decipher what a jury necessarily decided in a prior trial, courts should examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.

*Coleman v. State*, 946 N.E.2d 1160, 1164-65 (Ind. 2011) (internal citations omitted).

In dismissing Oxley's motion to dismiss, the trial court found that the issue of causation for the reckless homicide was not necessarily resolved when the jury acquitted Oxley of the two counts of criminal recklessness.  As stated in *Woods*, we will find an abuse of discretion only if the trial court's decision was clearly against the logic and effect of the facts and circumstances.

We rely on *Coleman*, and we note that the task for this court is to establish whether the retrial of the reckless homicide charge against Oxley would, in essence, be relitigating an issue already decided by the jury.  Based on the jury's acquittal and failure to reach a

6

verdict on the reckless homicide charge in the first trial, the only issue of fact that we can say with certainty was litigated and decided in favor of Oxley is that he did not *recklessly, knowing, or intentionally act in a manner that created a substantial risk of bodily injury* to Hess and Bertke.

Taking into account the "pleadings, evidence, charge and other relevant matters," we conclude that a rational jury could have based Oxley's acquittal on the issue that even though he might have been driving recklessly on the night in question, there were several intervening causes, thus not making him blameworthy for the two counts of criminal recklessness. *Coleman*, 946 N.E.2d at 1165. We note that "an intervening cause is an independent force that breaks the causal connection between a defendant's actions and the victim's injuries." *Wooley v. State*, 716 N.E.2d 919, 928 (Ind. 1999). Our review of the record reveals that the jury could have considered how difficult it was to see oncoming traffic on the southbound lane where the crash occurred; how much space Oxley had to return to the northbound lane in front of Hess's truck before the collusion; how close Oxley was to the crest of the hill when he initiated the pass; how fast he drove; and whether Oxley continued to speed up in response to Hess.

Based on the foregoing, we find that Oxley's acquittal of the criminal recklessness charges collectively could have been based on that evidence as well on the evidence that Hess's conduct—driving above the speed limit and speeding—played a role in the collision. Since the intervening causes basically broke the causal connection between Oxley's actions of driving recklessly, and the injuries sustained by Hess and Bertke, we

conclude by stating that even though Oxley might have driven in a reckless manner on the night in question, the jury could have decided that Oxley's conduct was not the direct and proximate cause of the injuries sustained by the occupants in Hess's truck, but rather Hess's actions were. Therefore, because the reckless element in the criminal recklessness was *not necessarily* decided by the jury's acquittal, the State can pursue its retrial of Oxley, on the reckless homicide charge.

Based on the foregoing, we find that the jury's acquittal of the criminal reckless charge did not subject Oxley to double jeopardy.

## CONCLUSION

In conclusion, we find that collateral estoppel did not bar relitigation and that the trial court correctly denied Oxley's motion to dismiss. Therefore, we find that State's retrial of Oxley for reckless homicide would not be in violation of double jeopardy principles.

Affirmed.

ROBB, J. and BRADFORD, J. concur

8